STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. FARMERS STATE BANK, APPELLEE.

UNITED STATES NATIONAL BANK, CLAIMANT, APPELLANT, V. LAWRENCE A. FRICKE, RECEIVER, APPELLEE.

FILED APRIL 16, 1925. No. 23300.

Banks and Banking: GUARANTY FUND: LIABILITY. The bank guaranty law in denying to a stockholder the right of priority, if he borrows money for the bank instead of the bank borrowing it for itself, or bases his claim to priority on an evidence of indebtedness representing money obtained by him for the purpose of effecting a loan of funds to the bank, does not prevent a stockholder from individually depositing his own money in the bank in good faith for his own benefit, nor from participating individually in the bank guaranty fund, where he does nothing to forfeit that right.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed in part, and reversed in part.*

*Mothersead & York* and *Morsman, Maxwell & Haggart,* for appellant.

*Williams, Hurd & Neighbors* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

ROSE, J.

This is a controversy between the receiver of the Farmers State Bank of Bayard, an insolvent corporation, and the United States National Bank of Omaha, claimant, over the payment of four certificates of deposit out of the bank

State, ex rel. Davis, v. Farmers State Bank.

guaranty fund. In a proceeding by the state for the appointment of a receiver, claimant filed a petition for the allowance of claims based on certificates of deposit issued by insolvent as follows: To A. A. Ericson July 13, 1921, due January 13, 1922, $2,000; to A. A. Ericson October 15, 1921, due April 15, 1922, $6,000; to J. A. Cavett September 22, 1921, due November 20, 1921, $5,000; to T. E. Williams September 22, 1921, due November 20, 1921, $5,000; each bearing interest at the rate of 5 per cent. per annum. Claimant pleaded that these certificates of deposit were assigned to it in due course of business, that they are unpaid, and that they are protected by the bank guaranty fund. The receiver in an answer to the petition of claimant resisted the allowance of the claims as charges against the bank guaranty fund on the grounds that the certificates of deposit evidenced loans to the bank instead of deposits therein, that the payees were stockholders whose claims were not within the protection of the bank guaranty fund, and that claimant acquired by assignment no greater right. The statute on which the receiver relies contains this provision:

"No claim to priority shall be allowed which is based upon any evidence of indebtedness in the hands of or originally issued to any stockholder, officer or employee of such bank, which represents money obtained by such stockholder, officer or employee, from himself or some other person, firm, corporation or bank in lieu of or for the purpose of effecting a loan of funds to such a failed bank." Comp. St. 1922, sec. 8033.

Upon a trial of the issues the district court allowed the certificates of deposit as general claims aggregating $19,093.98, including interest, against the assets of insolvent, but denied recourse to the bank guaranty fund. Claimant has appealed.

Did the certificates of deposit issued by insolvent to Ericson evidence valid claims against the bank guaranty fund? He was a stockholder from the time the bank was organized

until it was closed, a period of several years.  He was also
a depositor of his own money subject to check.  When the
solvency of the bank was not in question he exchanged a
2,000-dollar check against his own account for a time certif-
icate of deposit in the same amount.  The 2,000-dollar cer-
tificate of deposit in controversy is the last of a series of
renewals having their origin in the earlier deposits.  It
evidences an honest deposit of Ericson's money, left with
the bank in good faith and accepted without fraud or col-
lusion.  As a deposit the other item, $6,000, is also above
reasonable suspicion.  Ericson had been a partner in the
drug business at Bayard for 12 years.  The drug store
was sold in 1919 for $14,445 in cash.  The firm had $16,000
on deposit in the bank, now insolvent.  Of that sum $8,000
belonged to Ericson and he deposited it in his own name in
an open account subject to check.  Later he put $6,000 of
this money into a certificate of deposit of which the one in
controversy is the last of a series of renewals.  He was an
individual depositor in his own behalf all the time.  His
relation to the bank was not changed by the substitution of
a time certificate of deposit for its equivalent in deposits
subject to check, nor by renewals.  There was a mere
change from deposits payable by check on demand to a de-
posit payable at a definite time in the future.  The subse-
quent failure of the bank and the resulting disaster visited
upon Ericson as a stockholder did not destroy his previous
rights as an individual depositor of his own money for his
own benefit.  In absence of fraud or collusion, the law does
not prevent a stockholder in a state bank from depositing
his own money therein, nor prevent a recourse by him to
the bank guaranty fund, where he does nothing to forfeit
that right.  The statute was recently so construed, the
court saying:

"One of the purposes was to deny to a stockholder the
right of priority upon a claim, based upon evidence of in-
debtedness which represents money obtained by such stock-
holder from himself or others, for the purpose of effecting

a loan of funds to such bank." *State v. Farmers State Bank, ante,* p. 82.

The inhibitions of the statute did not apply to the certificates of deposit issued to Ericson. He was not a stockholder borrowing money instead of the bank, nor was the claim to priority as to these items based on an evidence of indebtedness representing money obtained by a stockholder. He did nothing for the purpose of effecting a loan of money to the bank from any source. His certificates represented deposits within the meaning of the bank guaranty law. He had a right to sell them and his interests therein were transferred to claimant by assignment. The conclusion is that the trial court erred in rejecting the two items, one for $2,000 and one for $6,000, as claims against the bank guaranty fund.

The other two items are on a different footing. While Williams and Cavett were stockholders, each borrowed from claimant $5,000 at a time when the deposits in the Farmers State Bank of Bayard were running down. Each left that sum with the bank named and received therefor a 5,000-dollar certificate of deposit which he assigned to claimant. The time covered by these transactions was a day or two. Williams testified that he borrowed the money intending to deposit it in the bank now insolvent, that in a way he borrowed it for the benefit of the bank, and that he did so "for the purpose of keeping the deposits up." Cavett's transactions were of the same character. Both of these certificates of deposit represented loans procured by stockholders for the benefit of the bank and they were not valid claims against the bank guaranty fund. The evidence will admit of no other conclusion. That part of the judgment rejecting them as such is affirmed. As to the items of $2,000 and $6,000, respectively, the judgment is reversed for the purpose of directing payment thereof out of the bank guaranty fund.

AFFIRMED IN PART, AND REVERSED IN PART.